1
2
3
4
5
6
7
8
    **IN THE UNITED STATES DISTRICT COURT FOR THE**
9
      **EASTERN DISTRICT OF CALIFORNIA**
10
11
  **ADAM G. JIMENEZ,**      )    **CV F 06-1075 AWI**
12
       **Plaintiff,**    )    **PRETRIAL ORDER**
13
    **v.**          )    **Motions In Limine Hearing:**
14
             )      **March 30, 2009**
  **CALIFORNIA HIGHWAY PATROL**  )      **2:00 p.m., Courtroom 2**
15
  **OFFICER L. BUTLER; CALIFORNIA**  )
  **HIGHWAY PATROL OFFICER C.**   )    **Trial:  April 7, 2009**
16
  **PRICOLO; UNKNOWN LAW**    )      **9:00 a.m., Courtroom 2**
  **ENFORCEMENT OFFICERS; M. L.**  )
17
  **BROWN COMMISSIONER,**    )    **RULES OF CONDUCT**
  **CALIFORNIA HIGHWAY PATROL,**  )
18
             )
       **Defendants.**   )
19
  _____)
20
21
    The pretrial conference was held on March 5, 2009.   The trial in this matter is set
22
for April 7, 2009.  The parties currently estimate that the trial shall take five days.
23
<u>I.  Jurisdiction and Venue</u>
24
    The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and has
25
venue in this action pursuant to 28 U.S.C. § 1391(b).  These matters are undisputed.
26
<u>II.  Jury Trial</u>
27
    The parties have invoked their rights to a jury trial under the Seventh Amendment to the
28
United States Constitution as to all triable issues.

III. Undisputed Facts

The facts pertaining to jurisdiction and venue are undisputed. All other facts are disputed.

IV. Disputed Factual Issues

A.  Plaintiff's Disputed Factual Issues

1.  Whether Plaintiff was illegally detained, arrested and searched in connection with the subject incident.

2.  Whether Plaintiff sustained damages as a result of misconduct committed by one or more of the defendants.

3.  What are Plaintiff's damages as a result of the defendants' wrongful acts.

4.  Whether the Defendants' acts were wanton and willful so as to require the imposition of punitive damages.

B.  Defendants' Disputed Factual Issues

1.  Whether there was reasonable suspicion for the traffic stop initiated by Defendants on October 22, 2005.

2.   Whether Plaintiff's arrest was valid under Fourth Amendment Standards. *See Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998).

3.  Whether Plaintiff was asked to perform and subsequently refused the preliminary alcohol screening  (PAS) test by Defendant Butler on October 22, 2005.

4.  Whether there was probable cause for the search of Plaintiff's car by Defendant Pricolo incident to the arrest or officer safety prior to the arrest.

5.  Whether either Defendant discriminated against Plaintiff in the enforcement of any law  based upon race.

6.  Whether Plaintiff sustained any damages in connection with his arrest for DUI.

V. Disputed Evidentiary Issues

A.  Plaintiff's Evidentiary Issues

1.      The plaintiff will seek to exclude the presentation or use of any documents, or testimony of an involved defendant's lack of prior complaints or discipline.  Such matters were held to be irrelevant by the Ninth Circuit in <u>Gates v. Rivera</u>, 993 F.2d 697, 700 (9th Cir. 1993).

2.      The plaintiff will oppose in the strongest terms any attempt by the defense to introduce inadmissible character evidence under Federal Rule of Evidence 404 and  Federal Rule of Evidence 403.

3.      The plaintiff will move to exclude any expert from giving an opinion as to credibility or giving an opinion based on factual findings (as opposed to hypotheticals), which necessarily require credibility determinations.

4.      The plaintiff will move to preclude any prejudicial collateral impeachment, and prohibit the use of any extrinsic evidence to corroborate such a collateral matter.

5.      Plaintiff reserves the right to file any other necessary motions in limine in accordance with the schedule set by the Court.

B.      <u>Defendants' Evidentiary Issues</u>

1.      Defendants will move to preclude the presentation or use of any documents, or testimony concerning any Defendant's departmental disciplinary history.

2.      Defendants anticipate offering the trial testimony of CHP Officer Aaron Rohner, who was timely declared as a non-retained expert as the "person most knowledgeable" in Field Sobriety Testing and Training" at the CHP academy.  Officer Rohner, was neither retained nor employed by Defendants for the purposes of FRCP 26 (b)(2).  Subsequent to the dates set by the court in the Scheduling Order for disclosing retained experts and employees of Defendants, defense counsel contacted the CHP and learned of the identity of the person the CHP identified as the "person most knowledgeable."  Plaintiff's counsel was supplied with this supplemental information, and defense counsel offered to stipulate to permit any further

discovery Plaintiff might seek, however, no discovery of his opinions has occurred.

It is reasonably anticipated that Plaintiff will move to exclude Officer Rohnert's expert testimony regarding FSTs on late disclosure grounds.

3. Defendants will move to exclude the presentation or use of any documents, or testimony pertaining to any Defendants' prior citizen complaints or CHP disciplinary history obtained via the Public Records Act, subpoena and Court Oder, tending to suggest that Defendant officers engaged in similar arrests involving suspected DUIs with non-Caucasian arrestees.

4. Defendants will move to exclude all exculpatory facts not known to them at the time of the stop and arrest, as all facts unknown to them at the time of the stop and arrest are irrelevant to the determination of probable cause and, therefore, inadmissible.

It is understood that Plaintiff, in an effort to create triable issues of material fact, would otherwise attempt to introduce documentary and/or testimonial evidence, including: (1) results of forensic testing of Plaintiff's blood sample taken at the hospital while in custody, and (2) the District Attorney's decision not to file charges against him and finding of actual innocence.

5. Plaintiff also identifies several witnesses that could be called at trial to testify regarding his medical condition, care, and treatment prior to the arrest. These facts and anticipated testimony are irrelevant and immaterial to the determination of probable cause.

6. Defendants will move to exclude Plaintiff, who was a part time juvenile hall officer at the time of his arrests, from offering opinion testimony on probable cause to arrest for drug influence or other opinions which require specialized knowledge or training, he does not possess. The reasonableness of the officer's conduct must be assessed from the perspective of the reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). Plaintiff is not a police officer and is not qualified to offer opinions as to the reasonableness of the defendant's actions in detaining and arresting him.

VI. Special Factual Information

       Pursuant to Local Rule 16-281(b)(6), the following special factual information pertains to this action:

    A. Plaintiff

       Plaintiff filed this action invoking the original jurisdiction of this Court pursuant to 28 U.S.C. § 1331, 1343 and 2201. This is essentially a federal civil rights action, which requests both compensatory and declaratory relief.

       Basically, this action arises from the plaintiff's being unlawfully stopped, searched, detained and arrested. Plaintiff also alleges he was a victim of racial profiling, which is prohibited by the federal and state constitutions and state law.

       Plaintiff was reported by his arresting officers, CHP Officers Butler and Pricolo, to have exhibited signs of significant intoxication, including having a strong smell of alcohol, slurred speech, the inability to stand still, and other symptoms commonly invoked by arresting officers. However, these reported signs could only have been falsely reported, since plaintiff tested negative for any trace of alcohol or drugs in his system in blood tests analyzed by both the Department of Justice Bureau of Forensic Sciences and by private laboratories enlisted by plaintiff himself shortly after his release from custody the following morning.

       The defendant officers' agency, the CHP, has already certified that the facts surrounding his arrest justified a finding of his actual innocence and the expungement of his arrest record under state law. Moreover, no criminal charges were ever filed against plaintiff by the District Attorney.

       Based on initial documents obtained via the Public Records Act and pursuant to subpoena, plaintiff is informed and believe that the defendant officers engaged in similar illegal action in numerous cases, the overwhelming majority of them involving minorities.

       Plaintiff includes herewith as an addendum his detailed discovery responses, which more fully set forth his legal and factual contentions, as well as his damages as a result of the

defendants' misconduct.

B. Defendants

Plaintiff alleges, in his First Cause of Action against Officers Butler and Pricolo, a civil and constitutional rights violation under the Fourth Amendment, to not be detained, searched, or arrested without reasonable suspicion and/or probable cause. Plaintiff's Third Cause of Action alleges a violation of Cal. Civ. Code § 52.1 against Officers Butler and Pricolo, for depriving plaintiff of his right not to be detained, searched and arrested without probable cause, his right not to be retaliated against as a result of an exercise of his constitutional right to protest, and his right not to be subjected to discriminatory enforcement of the law. [Complaint, pp. 5-6, ¶¶20-22.] Plaintiff's Fourth Cause of Action alleges that Officers Butler and Pricolo falsely detained and arrested plaintiff in violation of plaintiff's rights under California law not to be falsely detained or arrested. [Complaint, p. 6, ¶¶23-25.]

Plaintiff additionally contends, in his Second Cause of Action, that he has a right not to be subjected to racial profiling pursuant to Penal Code section 13519.4, and seeks a declaration from the Court, that his rights as outlined were violated. Further, the claim for state declaratory relief, incorporated into the Fifth Cause of Action, requests: (1) a remedial order requiring the CHP to prevent future such actions by its Fresno County officers; (2) a declaration that may be based on the facts, without regard to the issue of qualified immunity, which only applies to claims for monetary relief; and (3) further relief under Code of Civil Procedure §1060 and attorney's fees under Code of Civil Procedure § 1021.5.

The Defendants followed Plaintiff's car for several traffic lights and had noticed that the turn signal activated whenever Plaintiff applied the brake. Based upon this observed lighting violation, the traffic stop was conducted. There is no dispute concerning whether the lights were malfunctioning. The lights had been installed by Plaintiff, who supposes that one of the wires may have crossed. Defendants maintain that there was reasonable suspicion for the traffic stop.

During the stop, Officer Butler noticed a "duty belt" on the rear seat of Plaintiff's car, and

since plaintiff's shirt was untucked and the officer was unable to determine whether Plaintiff was carrying a weapon, asked plaintiff to exit the car. Officer Butler also detected an odor of alcohol on Plaintiff and administered the field sobriety tests, which Plaintiff performed unsatisfactorily. The subsequent search of the car should be found valid under any applicable standard, either as an investigatory search or a search incident to arrest.

## VII. Relief Sought

### A. Plaintiff

The plaintiff is requesting an award of compensatory and hedonic damages, punitive damages, and declaratory relief. Plaintiff is also requesting an award of fees to the extent permitted by 42 U.S.C. § 1988, cost of suit and any other relief to which he may be entitled.

### B. Defendant

Defendants seek judgment in their favor, costs and attorney fees.

## VIII. Points of Law

### A. Plaintiffs' Contentions

Plaintiff makes the following claims:

Jimenez asserts his rights against false detentions and arrests, and unlawful seizure of evidence. Plaintiff also asserts similar claims under Civil Code § 52.1 and California common law. Plaintiff seeks compensatory and punitive damages.

The basic law pertaining to these claims is as follows:

1.  42 U.S.C. § 1983

    a.  General Law Applicable

Plaintiffs claim that the defendants violated their federal civil rights protecting them from excessive force and unreasonable searches and seizures. 42 U.S.C. § 1983 provides civil damage remedies to all persons "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" are "depriv[ed] of any rights, privileges, or immunities secured by the

Constitution and laws." To sustain a § 1983 civil rights action, a plaintiff must show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that [such] conduct deprived plaintiff of a federal constitutional or statutory right." Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989), cert. denied, 498 U.S. 938 (1990).

### 2. False Arrest/Detention Claim

A claim for false arrest is actionable under section 1983 where it violates the Fourth Amendment's prohibition of unreasonable search and seizure. Baker v. McCollan, 443 U.S. 137, 142-145 (1979); Pierson v. Ray, 386 U.S. 547, 555-558 (1967); Larson v. Neimi, 9 F.3d 1397, 1400 (9th Cir. 1993); Forster v. County of Santa Barbara, 896 F.2d 1146, 1147 (9th Cir. 1990). No specific intent is required. Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992) (no specific intent required to establish section 1983 claim for false arrest under Fourth Amendment). A claim of bad faith in making an arrest may also be a cause of action under section 1983 as an illegal and unconstitutional arrest. Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1986).

### 3. Compensatory Damages

"The purpose of awarding damages in a section 1983 action is to compensate the aggrieved party." Chalmers v. City of Los Angeles, 762 F.2d 753 (9th Cir. 1985). A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. Such damages are calculated in most circumstances according to general tort law principles applicable to the types of deprivations proved. See generally Carey v. Piphus, 435 U.S. 247 (1978). The victim of the constitutional deprivation is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations. See id. at 257-64.

### 4. Punitive Damages

Punitive damages in a section 1983 action are proper if the plaintiff demonstrates that a

8

defendant's unconstitutional conduct was motivated by an evil motive or intent, or that the defendant displayed a reckless or callous disregard to the plaintiff's federally protected rights. See Ward v. City of San Jose, 967 F.2d 280, 286 (9th Cir. 1992); Davis v. Mason County, 927 F.2d 1473, 1485 (9th Cir.), cert. denied, 502 U.S. 899 (1991).

### 5. Qualified Immunity

In civil rights cases, courts have created the rule of qualified immunity to insure "public officials' effective performance of their duties" by making it possible for them reasonably to anticipate when their conduct may give rise to liability for damages.  Anderson v. Creighton, 483 U.S. 635 (1987). Whether a government official "is entitled to qualified immunity turns on a two part inquiry: '(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?'" Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982); Mackinney v. Nielsen, 69 F.3d 1002, 1005 (9th Cir. 1995) (quoting Act Up! Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993)); Brady v. Gebbie, 859 F.2d 1543, 1555 (9th Cir. 1988).  The contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Brady, 859 F.2d at 1556. "This does not mean that  any official action is protected by qualified immunity 'unless the very action in question has previously been held unlawful,' but it does require that 'in the light of pre-existing law the unlawfulness must be apparent.'"  Mendoza v. Block, 27 F.3d 1357 (9th Cir. 1994) (quoting Anderson, 483 U.S. at 640). Courts have also noted the danger in defining rights too narrowly, as doing so would be to allow defendants "to define away all potential claims." Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). "An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." Mendoza, 27 F.3d at 1360.

### 6. State Law Claims

The plaintiff's state law claims consist of state civil rights claims, and a common law

false arrest claim.

a.    State Civil Rights Claims

Plaintiff seeks to vindicate the above-stated violations of his constitutional rights under section 1983's state law equivalent, California Civil Code section 52.1.  See Reynolds v. County of San Diego, 84 F.3d 1162 (9th Cir. 1996). Under Civil Code section 52.1, a plaintiff is entitled to treble damages for a violation of his civil rights.  See Reese v. Wal-Mart Stores, Inc., 73 Cal.App.4th 1225, 1231, 87 Cal.Rptr.2d 346 (1999).   Morever, article 1, section 13 of the California Constitution is coextensive with the Fourth Amendment, United States v. Wheeler, 641 F.2d 1321, 1322 (9th Cir. 1981); People v. Crowson, 33 Cal. 3d 623, 629, 190 Cal.Rptr. 165 (Cal. 1983), and article I, section 7 of the state Constitution provides the same substantive due process and equal protection rights afforded under the Fourteenth Amendment.  See Laguna Publishing Co. v. Golden Rain Foundation, 131 Cal.App.3d 816, 851-853, 182 Cal.Rptr. 813 (1982) (also stating that article 1, section 7 is self-executing).  Consistent with Government Code section 820.2, an official may be liable for a false arrest.  See Harden v. San Francisco Bay Area Rapid Transit Dist., 215 Cal.App.3d 7, 17, 263 Cal.Rptr. 549, 555 (1989).  With a few exceptions that are inapplicable here, a municipality is vicariously liable for the civil rights violations of its officials under state law.  See Mary M. v. City  of Los Angeles, 54 Cal. 3d 202, 208, 285 Cal. Rptr. 99 (1991); Government Code § 815.2.

b.    False Arrest

The essential elements of a common law claim of false arrest are: (1) the plaintiff was unlawfully arrested; (2) the defendants authorized, encouraged, directed or assisted in procuring plaintiff's arrest; and (3) the false arrest caused plaintiff damage.  BAJI No. 7.60; see generally Asgari v. City of Los Angeles, 15 Cal. 4th 744, 63 Cal. Rptr. 2d 842 (1997).

B.  Defendants' Contentions

Defendants present the following points of law:

1.    Detentions and Arrests are Analyzed under the Fourth Amendment.

10

The validity of an arrest must be analyzed under Fourth Amendment Standards, not due process standards.  *See, Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998).

The Terry doctrine "provides that 'based on a reasonable and articulable suspicion, a police officer may make a brief stop or 'seizure' of the individual to investigate suspected past or present criminal activity.' Such a seizure will be upheld as constitutionally permissible so long as it was 'justified at its inception, and if so, . . . the action taken was reasonably related in scope to the circumstances which justified the interference.'" *U.S. v. Acosta-Colon*, 157 F.3d 9, 14 (9th Cir. 1998) (citations omitted).  "This 'reasonable suspicion,' while less than probable cause, must be more than an 'unparticularized suspicion or "hunch"'' [392 U.S.] at 27, 88 S.Ct. at 1883." *Puliafico v.County of San Bernardino*, 42 F.Supp.2d 1000, 1007 (1999).

Jurors will be presented with what began as an officer's routine traffic stop that resulted in an arrest.  During this event, the nature of the contacts between the officer and the civilian changed.

2.    Probable Cause Standards Applied to Plaintiff's DUI arrest.

"The reasonableness and hence constitutionality of a warrantless arrest is determined by the existence of probable cause.  *United States v. Hoyos*, (9th Cir. 1989) 892 F.2d 1387; *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).  "There is no doubt that police may arrest a person without a warrant if the arrest is supported by probable cause."  *U.S. v. Valencia-Amezcua*, 278 F.3d 901, 906  (9th Cir. 2002).  Probable cause to arrest exists when "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the accused] had committed a crime."  *Id*.

Whether a law enforcement officer is authorized to make an arrest will ordinarily depend, in the first instance, on state law.  *United States v. Mota*, 982 F.2d 1384, 1387 (9th Cir. 1993).  In the context of an action brought under 42 U.S.C. section 1983, however, the alleged deprivation is measured by the federal constitution.  *Id*.  Nevertheless, "[s]tate law is often relevant in analyzing the reasonableness of police activities under the fourth amendment."  *Reed v. Hoy*, 909

F.2d 324, 330 n.5 (9th Cir. 1990).

State and federal claims relating to allegations of unreasonable search and seizure are measured by the same standard. *People v. Camacho,* 98 Cal.Rptr.2d 232 (2000). This is because probable cause to arrest under the U.S. Constitution is defined in very much the same terms as reasonable cause under California law: "Probable cause to arrest arises when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *U.S. v. Moses,* 796 F.2d 281, 283 (9th Cir. 1986).

The standard is similar under California law: "A peace officer may arrest a person . . . without a warrant . . . whenever any of the following circumstances occur: (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence. . . ." Cal. Penal Code § 836(a)(1). Probable cause[1] for a warrantless arrest exists if "the facts and circumstances known to the arresting officer would cause a man of ordinary care and prudence to believe and to conscientiously entertain an honest and strong suspicion that an offense has been committed and that the accused is guilty thereof." *People v. Gomez,* (1976) 63 Cal.App.3d 328, 333. "The test is not whether the evidence would support a conviction but only whether it supports a strong suspicion." *Id.*

California and federal courts agree that "the determination whether [the] facts support an objective belief that probable cause or reasonable suspicion existed is ordinarily a question for the court." *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir. 1993); *cf. Peng v. Hu,* 335 F.3d 970, 979-80 (9th Cir. 2003) (stating that "where the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for [the] court to determine whether probable cause existed at the time [the defendant] arrested [the plaintiff]").

---

1. The terms reasonable cause and probable cause are used interchangeably in determining whether an arrest was justified. *Wilson v. County of Los Angeles*, 21 Cal App 3d 308 (1971).

In determining the existence of probable cause to believe a person is under the influence of alcohol or a drug, California courts have held the following factors to be significant:

(1) observation of the arrestee's driving;
(2) erratic driving such as speeding or weaving;
(3) bloodshot eyes or altered pupils;
(4) slurred or otherwise altered speech patterns;
(5) alcoholic beverage odor;
(6) absence of such an odor or too slight an odor to explain the arrestee's impaired functioning;
(7) poor coordination as indicated by stumbling, unsteady gait, failed field sobriety tests, or other physical conduct; and
(8) the experience and training of the peace officer who makes these observations.

*See People v. Knutson*, 60 Cal.App.3d 856 (1976).

Probable cause is a complete defense to the 42 U.S.C. section 1983 claim. Each of Plaintiffs' state claims arise out of the allegation that Defendants arrested him without probable cause. Thus, probable cause is a complete defense to each alleged state claim. A peace officer, including a CHP Officer under Penal Code section 830.2(a), may lawfully arrest a person without a warrant if there is "reasonable cause to believe that the person to be arrested has committed a public offense in his presence." Cal. Pen. Code, § 836. The term "public offense" includes misdemeanors. Cal. Pen. Code, § 16; *People v. Tuck*, (1977) 75 Cal.App.3d 639, 644. Probable cause is also a complete defense to a civil action for false arrest or false imprisonment. *White v. Martin*, 215 Cal.App.2d 641, 643 (1963); *see* Cal. Pen. Code, § 847.

3.     Statutory Immunities That Apply to the State Claims.

i.     California Penal Code Section 847.

A peace officer is not liable for false arrest or false imprisonment arising out of authorized arrest. Cal. Pen. Code, § 847. A peace officer acting within the scope of his or her authority will not be liable for false arrest or false imprisonment of a person arrested for a misdemeanor if the arrest was lawful, or if the officer had reasonable cause to believe the arrest was lawful at the time it was made, or if the arrest is made pursuant to a charge made upon reasonable cause of the commission of a felony by the person to be arrested. Cal. Pen. Code, §

13

847(a) and (b).

ii.     California Penal Code Section 836.5(a).

A public officer or employee is immune from suit for false arrest when the arrest is made pursuant to Penal Code section 836.5(a).  To preserve immunity under the statute, the public officer or employee must act within the scope of his or her authority in making the arrest. Moreover, the arrest must be lawful or the public officer or employee must have reasonable cause to believe that the arrest is lawful at the time it is made.  Pen. Code § 836.5(b).  An arrest pursuant to Penal Code § 836.5(a)occurs when a public officer or employee arrests a person without a warrant for an offense prohibited by ordinance. The officer or employee must have reasonable cause to believe that the person arrested has committed, in the officer or employee's presence, a misdemeanor, violating a statute or ordinance that the officer or employee has a duty to enforce.  Pen. Code § 836.5(b).

4.     Qualified Immunity Applied to this Action.

Qualified immunity protects government officials performing discretionary functions where their conduct is objectively reasonable. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982.)  A law enforcement officer is entitled to qualified immunity if the court determines that the officer could reasonably have believed his conduct was lawful.  *See Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993); *see also*, *Davis v. Scherer*, 468 U.S. 183, 191 (1984).

In deciding qualified immunity the court first determines whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred. *Hallstrom*, 991 F.2d at 1482; *Act Up!/Portland  v. Bagley*, 998 F.2d 868, 871 (9th Cir. 1993).  The court then determines whether, under that clearly established law, a reasonable officer could have believed his conduct lawful.  *Ibid*.  This is a test of the objective reasonableness of the defendant's actions.  *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994).

i.     Arrest And Detention Standard.

In actions alleging an unlawful arrest, the qualified immunity determination turns

14

on whether "'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the . . . officer [ ] possessed.' Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

[T]he issue is 'not probable cause in fact but 'arguable' probable cause.' " *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir. 1989). The immunity gives ample room for error because officials should not err always on the side of caution because they fear being sued. *Hunter*, 503 U.S. at 228-29; *see Fuller v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991). "The qualified immunity doctrine allows for mistaken judgment and protects 'all but the plainly incompetent or those who knowingly violate the law.' *Hunter*, 502 U.S. at 229, quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Policy considerations favor a liberal application of immunity. *Ashelman v. Pope*, 793 F.2d 1072,1078 (9th Cir. 1986).

Application of the immunity in false arrest cases is to be decided by the Court absent conflicts in the evidence. *Hunter*, 502 U.S. 224, 227; *Act Up!/Portland*, 988 F.2d at 873-74.

Accordingly, the officers are entitled to qualified immunity if the Court determines that a reasonable officer would have believed that they had reasonable cause to detain and probable cause to arrest. Under the qualified immunity standard, the defendants need not establish actual reasonable cause or probable cause, but only a reasonable, objectively supportable belief that the requisite cause existed. The qualified immunity defense applies even absent reasonable or probable cause.

IX.  Abandoned Issues

None, except as to those defendants dismissed by the Court.

X.  Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS

15

SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

A. Plaintiffs' Witnesses

Plaintiff intends on introducing the following witnesses:

1. Adam Jimenez
2. Fresno County ID Tech Ashley Vargas
3. Fresno Sheriff's Sergeant Jack Sparke
4. CHP Sgt. Jason Elsome
5. CHP Capt. G.L. Fief
6. CHP Lt. D.J. Price
7. Fresno County Deputy District Attorney Barbara Dotta
8. The CHP officer who drove CHP patrol vehicle bearing license plate number 1204286 on the evening of October 22, 2005
9. Dr. Nikki Donaldson, Northwest Medical Group, Fresno, California
10. Patty Inriguez, customer service representative, Blockbuster Video, 2760 Whitson St., Selma, California
11. Fresno County CO Mike Mendoza
12. Personnel from University Medical Center, Northwest Medical Group and Community Medical Center Clovis, who, according to their respective records, assisted, evaluated, or treated plaintiff in connection with the underlying incident, or who have custody of the records related thereto;
13. Fresno County Jail custodian of records
14. Ralph Jimenez
15. Santa Ruiz, Supervising Technician, Bureau of Criminal Identification and Information, Applicant Processing Program, P.O. Box 903417,

16

1    Sacramento, CA 94203-4170

2    16.    Dr. Kirsten Honeyman, 5151 N Palm Ave Fresno, California

3    17.    Custodians of records for any records whose authenticity is not stipulated

4           by the parties

5    18.    Any witnesses disclosed during discovery erroneously omitted herein

6    19.    Any other percipient or expert witnesses named by the defendants

7           Defendants anticipate the following witnesses may be called to testify in

8           their behalf, in addition to Plaintiff and themselves:

9    B.  Defendants' Witnesses

10   Defendants anticipate the following witnesses may be called to testify in their behalf, in

11   addition to Plaintiff and themselves:

12   1.    Any percipient or expert witness named by either party, including Officer Aaron

13   Rohner.

14   2.    The custodians of records for any records whose authenticity is not stipulated by

15   the parties.

16   XI.  Exhibits

17   The following is a list of documents or other exhibits that the parties expect to

18   offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE

19   ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS

20   ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P.

21   16(e); Local Rule 16-281(b)(11).

22   A.  Plaintiffs' Exhibits

23   1.    Plaintiff's Citizen's Complaint

24   2.    Plaintiff's booking photograph

25   3.    Plaintiff's medical records from Northwest Medical Group

26   4.    Plaintiff's Records from California DOJ/BFS

27

28

5. The subject CHP reports and related paperwork

6. Plaintiff's citation

7. Plaintiff's medical records from University Medical Center

8. Plaintiff's records from the office of Dr. Honeyman

9. Plaintiff's PC § 851.8 pleadings and order

10. Internal Affairs binder re: plaintiff's citizen's complaint

11. Dispatch printout

12. Incident Scene Diagrams

13. Aerial photographs/diagrams of the incident scene

14. custody records from the Fresno Sheriff's Department

15. CHP CAD printout re: incident

16. CHP dispatch audiotape re: incident

17. Fresno County jail medical screening form

18. testing policies received from the Bureau of Forensic Sciences

19. electronic version of    plaintiff's digital booking photo;

20. Bureau of Forensic Sciences toxicology results

21. DMV paperwork re: administrative hearing and license reinstatement

22. records related to plaintiff's vehicle impound

23. documentation of plaintiff's out of pocket    expenses

24. Northwest Medical Group toxicology results

25. plaintiff's October 2005 pay stub from the Fresno Juvenile Hall and related portions of his personnel file

26. plaintiff's receipts from Taco Bell and Blockbuster Video on the night of his arrest

27. Mapquest printouts substantiating plaintiff's mileage calculations

28. records re: plaintiff's citizen's complaint to the CHP

29. DUI reports written by defendants Pricolo and Butler obtained via public records requests

30. Demonstrative Aids Prepared for Trial

31. Any document disclosed during discovery erroneously omitted herein

32. Any exhibit named by the defendants

B. Defendants' Exhibits

Defendant anticipates introducing exhibit #6, Plaintiff's citation and the following:

1. All documents relied upon by Officer Aaron Rohner that refer or relate to any opinion he may give regarding the CHP's policy and procedure for training officers in FST, including any document that refers or relates to the CHP's standards for performing and documenting such tests upon which he may rely.

XII. Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions

The parties intend to introduce certain of the opposition's responses to his requests for admissions, interrogatories, document requests, declarations and depositions as admissions of a party opponent. The parties also intend to use the deposition of Plaintiff for all purposes allowed under the Federal Rules of Civil Procedure and Evidence.

XIII. Further Discovery or Motions

None, except for motions in limine in accordance with the schedule set by the Court.

XIV. Stipulations

The parties propose that a stipulation to the authenticity of documentary evidence exchanged during discovery will further the efficient resolution of this action.

XV. Amendments/Dismissals

Defendant Brown has been dismissed.

XVI. Settlement Negotiations

The parties participated in an unsuccessful settlement conference. Plaintiff is willing to

participate in further settlement discussions and/or conferences. Defendant maintains that without another settlement demand, that any further court supervised settlement negotiations would not be necessary.

XVII. Agreed Statement

The parties shall submit an Agreed Statement of the Case to Deputy Clerk not later than April 2, 2009.

XVIII. Separate Trial Of Issues

Plaintiff contends that bifurcation is not necessary in this action, with the exception of as to the amount of punitive damages.

XIX. Impartial Experts - Limitation Of Experts

The parties do not believe that the Court appointment of an expert or the limitation on the number thereof is advisable.

XX. Attorneys' Fees

Both parties are requesting fees pursuant to 42 U.S.C. § 1988, should either prevail in this action.

XXI. Further Trial Preparation

A. Final Witness List

The parties are ordered to file and serve their final list of witnesses by April 2, 2009. Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

B. Trial Briefs

The parties are directed to file and serve a Trial Brief by March 25, 2009. Local Rule 16-285. The parties need not include in the Trial Brief any issue that is adequately

addressed in a motion in limine, or in an opposition brief to a motion in limine.

In addition to the matters set forth in Local Rule 16-285, the parties shall in particular discuss the following point of law in their trial briefs:

NONE SPECIFIED.

C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than March 11, 2009, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff not later than April 2, 2009, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the

party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d)  Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

D.  Discovery Documents

By April 2, 2009, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by April 2, 2009.

E.  Motions In Limine Hearing and Briefing Schedule

The hearing for motions in limine will be held on March 30, 2009, at 2:00 p.m. in Courtroom 2.  In addition to addressing any filed motions in limine, at that time the court will

22

also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing for motions in limine.

By 4:00 p.m. on March 16, 2009, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

By 4:00 p.m. on March 25, 2009, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel. If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

### F. Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon. The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury. If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well. The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### G. Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

### H. Voir Dire

The parties shall file proposed voir dire questions, if any, by April 2, 2009.

Additionally, in order to aid the court in the proper voir dire examination of the

prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of the prospective witnesses they expect to call, omitting any witness listed in this Pretrial Order whom the party no longer intend to call. This list shall contain the names of the each witness, and the business and/or home address of each witness.

I. Proposed Jury Instructions

The parties shall file proposed jury instructions by March 25, 2009, along with a copy of the proposed instructions on a 3-1/2 inch computer disc, preferably formatted for WordPerfect 8.

All proposed jury instructions shall be in duplicate. One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction. The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer immediately after the March 30, 2009 hearing on motions in limine to determine which instructions they agree should be given. As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions. As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

J. Proposed Verdict Form

Each party shall file a proposed verdict form by March 25, 2009.

K. Use Of Videotapes

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk on March 25. 2009. If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

L.  Use of Videotapes

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

M.  Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by April 2, 2009.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.


FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

COURTROOM THREE

RULES OF CONDUCT DURING TRIAL

A.  General Rules

    1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

    2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

    3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

    4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

B.  Jury Selection

    1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

C.  Opening Statements

1. Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.  Case in Chief

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.  Witnesses

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.  Exhibits

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2. An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3. The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G. Objections

1. No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated. The court will permit counsel to argue the matter at the next recess.

2. The court will not assume that any objection made also implies with it a motion to strike an answer that has been given. Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H. Closing Argument

1. Counsel may use visual aids in presenting the closing argument. However, any proposed visual aids shall be shown to opposing counsel before closing argument.

IT IS SO ORDERED.

**Dated:    March 9, 2009**              /s/ Anthony W. Ishii
                                    CHIEF UNITED STATES DISTRICT JUDGE